IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:06CV229-01-MU

STANLEY CORBETT, JR.,          )
                               )
        Plaintiff,             )
                               )
    v.                         )
                               )           **O R D E R**
OFFICER STAPLETON, et al.,     )
                               )
        Defendants.            )
_____)

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed January 11, 2007.

For the reasons provided herein, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED.

## FACTUAL BACKGROUND

In his Complaint Plaintiff alleges that on March 2, 2005, Defendant Houston, a correctional officer, delivered a meal tray to him in segregation with pork on it. Plaintiff asserts that he informed Defendant Houston that he was on a non-pork diet but Defendant Houston responded that the paperwork indicated that Plaintiff was to receive a regular meal. Plaintiff continued to refuse the tray and asked Defendant Houston to get Sergeant Carver.

While Defendant Houston went to get the Sergeant, Plaintiff alleges that Defendant Taylor, another correctional officer, came to his cell to see if he was kicking his door and what

was going on. Plaintiff states that when Sergeant Carver arrived he refused to comply with Sergeant Carver's repeated orders to stick his hands out so that he could be handcuffed because they were going to take his property. Plaintiff asserts that several officers then arrived at his cell and he spoke with Captain Thomas and again he repeatedly refused to stick out his hands to be handcuffed. Plaintiff asserts that as Defendant Stapleton left he whispered to Plaintiff that he would hurt him. Ten minutes later Defendants Houston and Patterson arrived at his cell door. Again, Plaintiff refused repeated requests to stick out his hands. Defendants Houston and Patterson left.

Twenty minutes later the extraction team arrived at Plaintiff's door. When Defendant Patterson gave Plaintiff one last chance to comply, Plaintiff alleges that he complied and stuck his hands out. Plaintiff states that Defendant Patterson then handcuffed him and Defendant Taylor then sprayed him with mace. In addition, Plaintiff alleges that as he was moving away from the door in reaction to being maced, Defendant Stapleton hit him hard on the left side. Plaintiff alleges that on December 2, 2005, he was diagnosed with bursitis. On March 30, 2005, Plaintiff alleges that he was prescribed glasses. Plaintiff attributes his bursitis and his need for glasses to the events of March 2, 2005.

The facts set forth by Defendants[1] in their Motion for Summary Judgment do not differ drastically from those set forth by Plaintiff. Defendants allege that Plaintiff refused the pork tray and when Defendant Houston left to deliver trays to the rest of the inmates, Plaintiff began to

---

[1] The Court notes that Defendants Fisher and Roland have submitted affidavits asserting that they were not present or involved in any way in the incident that forms the basis of the Complaint. (Roland Aff.¶ 5; Fisher Aff. ¶ 5). Plaintiff argues in his response to Defendants' Motion for Summary Judgment that they were indeed present. Whether these individuals were present or not does not impact this Court's ruling.

kick his cell door and to curse. After being told that his property was going to be confiscated for a period of time as a result of his behavior, Plaintiff repeatedly refused to submit to handcuffs. As a result of Plaintiff's noncompliance, the Cell Extraction Team was assembled and prepared to enter Plaintiff's cell. The Cell Extraction Team leader gave Plaintiff one last opportunity to submit to handcuffs. Plaintiff at that time chose to comply but Defendant Taylor, the "cover officer," did not realize that Plaintiff was complying and sprayed a "short burst" of OC pepper spray into Plaintiff's cell. Defendant Patterson, the Cell Extraction Team Leader immediately knocked the spray out of Defendant Taylor's hand. Defendant Patterson then ordered Plaintiff's cell door opened and Defendant Stapleton, also unaware of Plaintiff's compliance, struck him on his upper torso with his shield. After being placed in full restraints, Plaintiff was immediately taken to the shower.

## LEGAL ANALYSIS

It is well established that the use of excessive force upon an inmate by prison officials violates the Eighth Amendment's[2] prohibition against cruel and unusual punishment. See Hudson v. McMillan, 503 U.S. 1, 5(1986). In order to prevail on an excessive force claim, an inmate must objectively show that the use of force was contrary to contemporary standards of decency and that he suffered more than a de minimus injury. See id. at 7. In addition, an inmate must establish that the force was applied "maliciously and sadistically for the purpose of causing harm" and not in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). In determining whether a prison official acted maliciously and

---

[2] Given the fact that the Plaintiff was a convicted felon at the time of the alleged incident, his excessive force claim is governed by the Eighth Amendment.

3

sadistically, a court should examine "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7.

A plaintiff must also establish that he received more than a *de minimus* injury.[3] Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997)(en banc)(relying upon Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861 (1979)); Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)(en banc). The *de minimus* requirement reflects the reality of the custodial setting which indicates that "[t]he Eighth and Fourteenth Amendments . . . establish only qualified standards of protection for prisoners and pretrial detainees against 'cruel and unusual punishment' and against 'excessive force that amounts to punishment." Riley, 115 F.3d at 1167. For this same reason, the Fourth Circuit has noted that "inherent in the Eighth and Fourteenth Amendments is the principle that not every malevolent touch by a prison guard gives to rise to a federal cause of action. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoners constitutional rights." Id.

After examining the record, this Court concludes that even taking Plaintiff's version of the facts to be true, Defendants did not act maliciously or sadistically. While it is unfortunate, it is not unforeseeable that when a prisoner creates a situation such as Plaintiff did, unintended consequences can occur. It is undisputed that the Defendants were responding to a disruptive

---

[3] Cf. United States v. Perkins, 470 F.3d 150 (4th Cir. 2006)(where Court concluded that mere "physical pain" met the broader definition of "bodily injury" as applied under criminal provisions 18 U.S.C. §§ 831(f)(5), 1365(g)(4), 1515(a)(5) and 1864(d)(2), and affirmed felony assault conviction under 18 U.S.C. § 242).

situation created by a defiant Plaintiff, who was already in segregation. Both sides also agree that at the eleventh hour Plaintiff complied and force was not necessary.[4] Defendants Taylor and Stapleton, however, state that at the time they did not know it was unnecessary. It was not until Defendants were poised and on the brink of performing the extraction that Plaintiff informed the Team Leader that he agreed to allow himself to be handcuffed. Unfortunately, without thinking through that the other team members were unaware of Plaintiff's compliance, Defendant Patterson ordered the Plaintiff's cell door to be opened. (Patterson Aff. ¶ 11). Defendant Taylor and Stapleton proceeded as if Plaintiff had continued his long-standing refusal to comply. As a result, Defendant Taylor[5] sprayed Plaintiff with mace and Defendant Stapleton ran into Plaintiff with his shield. (Stapleton Aff. ¶ 9, Taylor Aff.¶ ¶ 9-12). Defendant Taylor states in his affidavit that Defendant Patterson immediately knocked his mace container out of his hand. (Taylor Aff. ¶ 12). Defendants state that immediately following the incident Plaintiff indicated that he was okay. (Taylor Aff.¶ ¶ 14; Patterson Aff.¶ 12; and Houston Aff.¶ 21). It appears to this Court that the use of force employed in the incident at issue was, at most, a result of negligence in the execution of the cell extraction.[6] Consequently, this Court holds that Plaintiff has not

---

[4] In responding to Plaintiff's grievance regarding the use of force on March 2, 2005, the Grievance Examiner noted that an investigation revealed that the use of force was not proper and that corrective action was being taken with the staff.

[5] Indeed, Defendant Taylor states that this was the first extraction in which he had participated. (Taylor Aff.¶ 6).

[6] In his response to Defendants' Motion for Summary Judgment, Plaintiff points out various inconsistencies in the affidavits of the Defendants involved in the extraction incident. The Court notes that cell extractions are tense times when things happened quickly. It is to be expected that witnesses/participants to such an event would have slightly different memories of the events. These slight discrepancies raise material issues of fact.

established an excessive force claim against Defendants. See Whitney v. Albers, 475 U.S. 312, 320-21 (1986).

Moreover, even if it were determined that the incident was the result of more than negligence, this Court finds that at most, Plaintiff's injuries were de minimus. While Plaintiff alleges that he became near-sighted as a result of a single application of mace, this assertion is completely unfounded. As set forth by optometrist David Alexander, in his affidavit, nearsightedness is a condition that develops over time and is not caused by mace. (Alexander Aff.¶ 6).

In addition, Plaintiff alleges that he developed bursitis in his left shoulder as a result of being hit by Defendant Stapleton's shield. Defendants have submitted an affidavit of Joseph Lightsey, a medical doctor, setting forth that bursitis is not an uncommon condition and that it often develops as a result of exercise or weight lifting.[7] It is thus wholly unclear that Plaintiff's bursitis was caused by the extraction incident.

In addition, Dr.Lightsey states that Plaintiff suffers from a minor case of bursitis. In support of his assertion, Dr.Lightsey notes that Plaintiff has no build-up of fluid in the sac between the joint and that Plaintiff has no x-ray findings of bursitis.[8] (Lightsey Aff. ¶ ¶ 7-8). Such an injury is de minimus and Plaintiff's claim fails as a matter of law. See Riley, 115 F.3d at 167-68 (plaintiff's claim failed as a matter of law despite allegations that he suffered pain from cuffs, pain and welt from slap, fear for life and safety as well as nightmares and depression where

---

[7] The Court notes that Plaintiff admits that he lifts weights for exercise. (Compl.; P. Resp. Mot. Summ. J.)

[8] The Court notes that Plaintiff and Defendants dispute how many sick calls Plaintiff submitted with regard to his shoulder. This Court's ruling does not turn on the number of sick calls.

despite a large volume of complaints there was no mention of injury related to incident); Taylor, 155 F.3d at 483-86 (plaintiff's claim failed as a matter of law despite allegations that police hit him in the back, punched his ribs, placed knee in lower part of his back, while grabbing his head and pulling it backward until his back popped and shoved a wooden object into his nose with such force that his nose hemorrhaged where his medical records showed Plaintiff was only treated for abrasions on his wrists and ankles, slight swelling in jaw area, tenderness in some ribs and some excoriation of mouth and therefore did not substantiate plaintiff's claims of injury); Norman v. Taylor, 25 F.3d 1259, 1264-65 (4th Cir. 1994)(en banc)(plaintiff's claim failed as a matter of law where medical records did not support plaintiff's claim of injury or psychological harm), cert. denied, 513 U.S. 1114 (1995); Gray v. Jones, 129 F.3d 116 (4th Cir. 1997)(same); Williams v. Dehay, 81 F.3d 153 (4th Cir. 1996)(same).

In conclusion, this Court holds that Defendants did not apply force "maliciously and sadistically for the purpose of causing harm." Rather, at most, Defendants were negligent in their response to a tense situation that Plaintiff himself had caused to escalate. In addition, this Court holds that Plaintiff's nearsightedness was caused by the one time use of mace. Likewise, this Court holds that Plaintiff has not established that his bursitis was caused by the impact of the shield on his shoulder. Moreover, even if the bursitis was caused by this incident it is a de minimus injury.

**THEREFORE, IT IS HEREBY ORDERED that**:

1. Defendants' Motion for Summary Judgment is **GRANTED;** and

2. Plaintiff's Complaint is **DISMISSED**.

Signed: February 21, 2007

Graham C. Mullen
United States District Judge